SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
NANCY E. PRITIKIN, Cal. Bar No. 102392
379 Lytton Avenue
Palo Alto, California 94301-1479
Telephone:    650.815.2600
Facsimile:    650.815.2601
E mail        NPritikin@sheppardmullin.com

ADAM R. ROSENTHAL, Cal. Bar No. 246722
12275 El Camino Real, Suite 200
San Diego, California  92130
Telephone:    858.720.8900
Facsimile:    858.509.3691
Email:        ARosenthal@sheppardmullin.com

BRIAN S. FONG, Cal. Bar No. 262846
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email BFong@sheppardmullin.com

Attorneys for Defendant
KENNETH COLE PRODUCTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| JESUS CHAVEZ, as an individual and on behalf of all other similarly situated,, <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH COLE PRODUCTIONS, INC., a New York corporation; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. <br><br> **DEFENDANT KENNETH COLE PRODUCTIONS, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO THE CLASS ACTION FAIRNESS ACT 28 U.S.C. §§ 1332(d)(2) and 1453** <br><br> [Santa Clara County Court Case No. 17CV306407] <br><br> Complaint Filed:  February 6, 2017 |

-1-

SMRH:482433993.1                                                     NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant KENNETH COLE PRODUCTIONS, INC. ("Defendant" or "KCP") hereby removes the above-entitled action, Case No. 17CV306407, from the Superior Court of California, County of Santa Clara, to the United States District Court for the Northern District of California. This Court has original subject matter jurisdiction over Plaintiff Jesus Chavez's ("Plaintiff") lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453, because minimum diversity exists and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## **BACKGROUND**

1. Defendant KCP is a New York corporation with its principal place of business in New York, New York. [Declaration of David Edelman in Support of Defendant's Notice of Removal ("Edelman Decl."), at ¶ 3.] As part of its business, KCP formerly operated retail stores in California. [*Id.*, at ¶ 4.] KCP closed the last of its retail stores in California on or about February 3, 2017, and presently does not employ any non-exempt employees in California. [*Id.*] As of February 3, 2017, no non-exempt employees worked for KCP in California. [*Id.*]

2. Plaintiff Jesus Chavez worked for KCP as a non-exempt, Sales Associate at KCP's Gilroy, California retail store from September 7, 2016 to December 29, 2016. [*Id.*, at ¶ 3.]

3. On February 6, 2017, individually and on behalf of all other purportedly similarly situated non-exempt employees who worked for KCP in California from February 6, 2013 to the present, Plaintiff filed a putative class action Complaint against KCP in the Superior Court of the State of California, County of Santa Clara, Case No. 17CV306407 (the "Complaint").

4. On February 27, 2017, Plaintiff served a Notice and Acknowledgment of Receipt of the Complaint on Defendant. [Declaration of Brian S. Fong in Support of Defendant's Notice of Removal ("Fong Decl."), at ¶ 3.] On March 20, 2017 Defendant signed the Notice and Acknowledgment, thereby effectuating service of process. [*Id.*, at ¶ 4.] In addition to the Complaint and Notice and Acknowledgment of Receipt of the Complaint, Plaintiff also served Defendant with a Summons and a Civil Case Cover Sheet. [*Id.*] Attached hereto as **Exhibits A**,

-2-
SMRH:482433993.1                                                                                   NOTICE OF REMOVAL

**B**, **C** and **D**, are true and correct copies of the Complaint, Summons, Civil Case Cover Sheet, and signed Notice and Acknowledgment of Receipt of the Complaint, respectively. [*Id.*] **Exhibits A-D** contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a). [*Id.*] No other proceedings have been held in this action.

5. The Complaint asserts class claims against KCP arising out of Plaintiff's employment with KCP. Specifically, Plaintiff asserts class claims for: (1) inaccurate wage statements under Labor Code § 226(a); (2) failure to pay minimum wages under Labor Code §§ 1194, 1197 and 1197.1; (3) failure to pay overtime compensation under Labor Code §§ 510, 558 and 1194; (4) failure to provide meal periods under Labor Code §§ 226.7 and 512; (5) failure to provide rest periods under Labor Code §§ 226.7; (6) violation of the California Private Attorneys General Act under Labor Code §§ 2698-2699; and (7) unfair business practices under Business and Professions Code §§ 17200, *et. seq*.

6. On April 19, 2017, KCP filed an Answer to the Complaint, with the Superior Court of the State of California, County of Santa Clara ("Answer"). A true and correct copy of KCP's Answer (and proof of service) is attached hereto, collectively, as **Exhibit E**. [Fong Decl., at ¶ 5.]

7. KCP is the only defendant that has been named and served in this matter. S*ee, generally,* Ex. A (Complaint).

**DIVERSITY JURISDICTION UNDER CLASS ACTION FAIRNESS ACT**

8. The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

9. Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal. Defendant is only required to submit a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A plausible allegation of the

relevant jurisdictional facts is sufficient in a notice of removal. *Dart Cherokee*, 135 S. Ct. 547 at 554. Evidence is required only if the plaintiff contests, or the Court questions, the defendants' allegations. *Id.*

## **MINIMUM DIVERSITY EXISTS**

10. CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

11. Plaintiff has brought his claims on behalf of a putative class of purportedly "similarly situated" persons employed by Defendant as non-exempt employees in California within the four years prior to the filing of the Complaint (the "Putative Class"). [Complaint, ¶¶ 3, 7.]

12. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). KCP was, at the time of the filing of this action, and remains a citizen of the State of New York, in that it was and continues to be a corporation incorporated under the laws of the State of New York with its principal place of business and corporate headquarters in New York, New York. [Edelman Decl., at ¶ 3.] Specifically, nearly all of KCP's corporate functions are headquartered and based in New York, including human resources, finance, legal, payroll, information technology and executive support functions that are important to KCP's strategic leadership and day-to-day operations. [*Id.*] KCP's senior executive team, including the Chairman/Chief Creative Officer, the Chief Executive Officer, the Chief Financial Officer, and the General Counsel, are all based in New York, New York. [*Id.*] For this reason, the New York location is considered to be corporate headquarters for KCP. [*Id.*] Under the foregoing standard, KCP is a citizen of New York for purposes of removal.

13. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of

-4-

SMRH:482433993.1                                                                          NOTICE OF REMOVAL

domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). According to the home mailing address information of Plaintiff last on file with KCP, Plaintiff's home address is in Gilroy, California. [Edelman Decl., at ¶ 6.] Therefore, at the date of filing this civil action, at least one member of the Putative Class was not a citizen of New York.

14. The presence of "Doe" defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

### THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

15. During the four-year period from February 6, 2013, through the filing of the Complaint on February 6, 2017 (the "Putative Class Period"), KCP employed approximately 876 Putative Class members who worked at least one day in California. [Edelman Decl., at ¶ 4.] As such, the Putative Class meets CAFA's requirement of a putative class containing at least 100 members.

### THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

16. KCP employed Putative Class members in its retail operations in California. [*Id*., at ¶ 4.] On average, during the Putative Class Period, Putative Class members worked shifts of 6.38 hours per day and earned an average of $14.74 per hour. [*Id*., at ¶ 4.] Accordingly, each Putative Class member earned, on average, $94.04[1] for each day the Putative Class member worked for KCP in California. [*Id.*]

17. Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a putative class action exceed the sum of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Where a plaintiff fails to plead a specific amount of damages, the defendant seeking removal "must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Lowdermilk v. United States Bank Nat'l Assoc*., 479 F.3d 994, 998 (9th Cir. 2007). In other words, if the proponent of jurisdiction establishes that it is "more likely than not" that the plaintiff class members seek more than $5,000,000, then the proponent has

---

[1] $14.74/hour x 6.38 hours

satisfied its burden with respect to the amount in controversy. *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000).

18. Without making any admission of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's substantive and class allegations, and the alleged amount in controversy in Plaintiff's putative class action exceeds, in the aggregate, $5,000,000, as follows:

19. **Plaintiff's First Claim for Inaccurate Wage Statements:** Plaintiff alleges Defendant failed to provide Putative Class members with accurate itemized wage statement, as required by California Labor Code § 226. [Complaint, ¶ 32.] Specifically, Plaintiff alleges Defendant had a "pattern, practice and uniform administration of corporate policy" that failed to list the total number of hours worked and gross and net wages earned, which is based on Plaintiff's allegations (as described below), that Putative Class members were not paid all wages owed for unpaid minimum wages and overtime and missed meal and rest period premium pay. [Complaint, ¶¶ 32-34.] "[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or other similar language) … ." *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at *3 (C.D. Cal. July 28, 2015) [citing *Unutoa v. Interstate Hotels and Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. Mar. 3, 2015), *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)]. There were approximately 3,088 total wage statements, issued to approximately 301 Putative Class Members during the one-year limitations period for inaccurate wage statement penalties. [Edelman Decl., at ¶ 7.] Assuming, *arguendo*, that as Plaintiff alleges all of the wage statements received by Putative Class members during the one-year limitations period were

inaccurate and violate Section 226, in his First Cause of Action Plaintiff has placed at least **$293,750.00**[2] "in controversy."

20.   **Plaintiff's Second Claim for Minimum Wage Compensation:** Plaintiff alleges Defendant had a "pattern, practice and uniform administration of corporate policy" that failed to pay Putative Class members for time spent undergoing security checks after they had already clocked-out at the end of their shifts, for shifts that were less than eight hours in a day. [Complaint, ¶¶ 36, 37, 39.]  Of the approximately 103,230 total shifts during the four-year limitations period for unpaid minimum wages, 84,605 were less than eight hours.  [Edelman Decl., at ¶ 8.]  To recover for time spent undergoing security checks while "off-the-clock," Plaintiff must first establish that this time was not *de minimis*.  *See, e.g., Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) ["As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*."].  The Ninth Circuit has observed that "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id*.  While Defendant certainly does not concede that the time Plaintiff alleges he spent in a security check is compensable, nor does Defendant concede that this claim could be certified, for the purpose of removal only and for ease of calculation, Defendant will assume that each security check lasted approximately 10 minutes.  Assuming, *arguendo*, Plaintiff's individual and class claims relating to unpaid minimum wage are viable, in asserting this claim Plaintiff has placed approximately **$123,382.29**[3] "in controversy," as well as an additional alleged liquidated damages pursuant to California Labor Code § 1194.2(a), equaling approximately **$123,382.29**[4].  Plaintiff also alleges that Putative Class members are entitled to waiting time penalties pursuant to California Labor code §§ 201, 203.  [Complaint, ¶¶ 38, 39.]

---

[2] [$50/each initial wage statement violation x 301 initial wage statements] + [$100/each subsequent wage statement violation x 2,787 subsequent wage statements]

[3] [(84,605 shifts x 10 minutes) / 60 minutes] x $8.75/hour average minimum wage.

[4] "In any action under Section 98,1193.6, or 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."  Cal. Lab. Code § 1194.2(a)

21. **Plaintiff's Third Claim for Overtime Compensation:** Plaintiff alleges Defendant had a "pattern, practice and uniform administration of corporate policy" that failed to pay Putative Class members for time spent undergoing security checks after they had already clocked-out at the end of their shifts, for shifts that were in excess of eight hours in a day. [Complaint, ¶¶ 42, 44.] Of the approximately 103,230 total shifts during the four-year limitations period for unpaid minimum wages, 18,625 lasted more than eight hours. [Edelman Decl., at ¶ 9.] Assuming as discussed above that each security check lasted approximately 10 minutes, and without waiving any of its substantive and procedural defenses, in asserting this claim on behalf of himself and the Putative Class members he seeks to represent, Plaintiff's Third Cause of Action places approximately **$68,633.13**[5] "in controversy." In addition, Plaintiff also alleges that Putative Class members are entitled to waiting time penalties pursuant to California Labor code §§ 201 and 203. [Complaint, ¶¶ 43, 44.]

22. **Plaintiff's Fourth Claim for Meal Period Premiums:** Plaintiff alleges Defendant had a "pattern, practice and uniform administration of corporate policy" that forced Putative Class members to undergo security checks after they had already clocked-out for meal periods, resulting in them not receiving their full 30-minute meal period, and thus missing meal periods without consequently paying them the requisite missed meal period premium of one additional hour of pay. [Complaint, ¶¶ 46-51.] Plaintiff alleges that Putative Class members "were denied their right to 30-minute, off-duty meal breaks for any and all shifts in which they worked 5 hours or longer." [*Id*., at ¶ 46.] Of the approximately 103,230 total shifts during the four-year limitations period for unpaid minimum wages, 69,990 were more than five hours. [Edelman Decl., at ¶ 10.] Assuming that Putative Class members missed all of their meal periods, as Plaintiff alleges by asserting that there is a uniform pattern and practice, in bringing his Fourth Cause of Action for missed meal period premiums, Plaintiff has placed **$1,031,652.60**[6] "in controversy."[7] In addition, Plaintiff also

---

[5] [(18,625 shifts x 10 minutes) / 60 minutes] x $22.11/hour average overtime rate.

[6] $14.74/hour meal period premium x 69,990 missed meal periods

[7] While Plaintiff alleges that the required security checks caused Putative Class Members to miss their meal breaks, it is unclear from the Complaint whether Plaintiff seeks to recover unpaid

alleges that Putative Class members are entitled to waiting time penalties pursuant to California Labor code §§ 201, 203. [Complaint, ¶¶ 50, 51.]

23. **Plaintiff's Fifth Claim for Rest Break Premiums:** Plaintiff alleges Defendant had a "pattern, practice and uniform administration of corporate policy" that forced Putative Class members to undergo security checks after they had already clocked-out for rest breaks, resulting in them not receiving their off-duty 10-minute rest breaks, and without consequently paying them the requisite missed rest break premium of one additional hour of pay. [Complaint, ¶¶ 53-58.] Plaintiff alleges that Putative Class members "were denied their right to 10-minute, off-duty rest breaks for any and all shifts in which they worked 3.5 hours or longer." [*Id.*, at ¶ 53.] Of the approximately 106,356 total shifts during the four-year limitations period for unpaid minimum wages, 99,110 were more than 3.5 hours or longer. [Edelman Decl., at ¶ 11.] Assuming that Putative Class members missed all of their rest breaks, as Plaintiff alleges, Plaintiff's Fifth Cause of Action for alleged missed meal period premiums places approximately **$1,460,881.40**[8] "in controversy."[9] In addition, Plaintiff alleges Putative Class members are entitled to waiting time penalties pursuant to California Labor code §§ 201, 203. [Complaint, ¶¶ 50, 51.]

24. **Plaintiff's Sixth Claim for PAGA Penalties:** Plaintiff alleges Defendant had a "company-wide policy and practice in California" that failed to pay Putative Class members within 7 days of the close of each payroll period, as required by California Labor Code § 204. [Complaint, ¶¶ 60-62.] There were approximately 3,088 total pay periods, where wages were paid

---

wages, unpaid overtime, or unpaid minimum wages for time spent undergoing security checks, in addition to recovering premiums under Labor Code 226.7. To the extent, Plaintiff also seeks to recover unpaid wages, in any form, those amounts should also be included in any calculation of the amount in controversy and Defendant reserves the right to include those amounts in opposing any motion to remand

[8] $13.19/hour rest break premium x 99,110 missed rest breaks.

[9] While Plaintiff alleges that the required security checks caused Putative Class Members to miss their meal/rest breaks, it is unclear from the Complaint whether Plaintiff seeks to recover unpaid wages, unpaid overtime, or unpaid minimum wages for time spent undergoing security checks, in addition to recovering premiums under Labor Code 226.7. To the extent, Plaintiff also seeks to recover unpaid wages, in any form, those amounts should also be included in any calculation of the amount in controversy and Defendant reserves the right to include those amounts in opposing any motion to remand

1  to approximately 301 Putative Class Members during the one-year limitations period for penalties

2  pursuant to the Private Attorney General Act ("PAGA"), California Labor Code §§ 2698, *et seq*.

3  [Edelman Decl., at ¶ 7.]  Therefore, in asserting his Sixth Cause of Action Plaintiff has placed

4  approximately **$587,500.00**[10] "in controversy."[11]

5      25.    **Plaintiff's Seventh Claim for Waiting Time Penalties:** Plaintiff alleges

6  Defendant failed to pay timely wages upon separation of employment, for which Defendant is

7  liable for waiting time penalties equal to one workday's wages for each day the wages were not

8  paid, up to a maximum of 30 days' wages.  [Complaint ¶¶ 38, 43, 50, 57.]  There were

9  approximately 667 separate terminations of Putative Class members' employment during the

10  three-year limitations period for waiting time penalties.  [Edelman Decl., at ¶ 7.]  Therefore, in

11  asserting his Seventh Cause of Action for statutory waiting time penalties on behalf of himself and

12  Putative Class members, Plaintiff has placed approximately **$1,881,764.41**[12] "in controversy."

13      26.    **Plaintiff's Eighth Claim for Attorney's Fees:** In addition to seeking penalties and

14  remedies under the Labor Code on behalf of himself and the Putative Class members, the

15  Complaint also alleges that Plaintiff and the Putative Class Members are entitled to recover

16  attorneys' fees.  [Complaint, ¶¶ 34, 39, 44, 51, 58, 62.]  Claims for attorneys' fees *are* to be

17  included in the amount in controversy calculation, regardless of whether the award is discretionary

18  or mandatory.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)["[W]here an

19  underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary

20  language, such fees may be included in the amount in controversy."]  The Ninth Circuit typically

21  assumes attorneys' fees for a class action should be equal to 25% of the recovery.  *Hanlon v.*

---

[10] [$100/each initial late wage payment x 301 initial wage payments] + [$200/each subsequent late wage payment x 2,787 subsequent wage payments]

[11] To the extent that Plaintiff also seeks to recover PAGA penalties pursuant to Cal. Labor Code 1197.1(a), he has additionally placed approximately $726,850.00 "in controversy," calculated as [$100/each underpaid employee x 301 initial pay periods for which the employee is underpaid] + [$200/each underpaid employee x 2,787 subsequent pay periods for which the employee is underpaid].

[12] 667 terminations x $94.04 average daily pay x 30 days' maximum penalty.

*Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Using that 25% figure would equate to approximately **$1,339,365.44** based on the above for underlying damages and penalties.

27. Adding up these different items demonstrates that in filing his putative class action Plaintiff has placed at least **$6,696,827.18** in controversy. Because this amount exceeds $5,000,000 based on Plaintiff's allegations, Defendant has established the amount in controversy necessary to support federal jurisdiction under the CAFA.

### NONE OF THE CAFA EXCEPTIONS APPLY

28. The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5). However, none of these exceptions are applicable here.

29. The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed. *See* 28 U.S.C. § 1332(d)(3). However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed." Here, the action was originally filed in California and, as described above, Defendant is not a citizen of California. Thus, this exception does not apply.

30. Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed. However, these exceptions, too, only apply where at least one defendant, are a "citizen of the State in which the action was originally filed." See 28 U.S.C. §§ 1332(d)(4)(A)(i)(II)(cc) and 1332(d)(4)(B). Given that this action was originally filed in California, and Defendant is not a California citizen, these exceptions also do not apply.

31. Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or Putative Classes which number less than 100 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B). Given that Defendant is not a governmental entity, and the proposed class well exceeds 100 members, these exceptions also do not apply.

/ / /

/ / /

-11-

**VENUE**

32. Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2). This action originally was brought in the Superior Court of the State of California, County of Santa Clara.

**NOTICE OF REMOVAL**

33. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Santa Clara.

34. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as the following exhibits, including the Complaint **(Exhibit A)**; Summons (**Exhibit B**); Civil Case Cover Sheet (**Exhibit C**); Notice of Acknowledgment and Receipt (**Exhibit D**), and Answer (**Exhibit E**).

35. Because this Court has original jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2), removal of this action is proper pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446 and 1453.

**RESERVATION OF RIGHTS**

36. This Notice of Removal is filed subject to and with full reservation of all rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Defendant requests the above action pending before the Superior Court of the State of California for the County of Santa Clara be removed as required by the CAFA to the United States District Court for the Northern District of California.

///

///

///

///

///

1  Dated:  April 19, 2017

2                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4                          By          */s/ Brian S. Fong*
                                       NANCY E. PRITIKIN
                                       ADAM R. ROSENTHAL
                                       BRIAN S. FONG
                                       Attorneys for DEFENDANT
                                       KENNETH COLE PRODUCTIONS, INC.